Our third and final case this morning is 22-1516 United States v. McDonald Mr. Mack Chief Judge Diaz, May I please report? I am representing the defendant of James Edward McDonald Under the Oval Review, this court should conclude that James Edward McDonald's seizure violated the Fourth Amendment because police seized McDonald without developing the requisite reasonable suspicion that he was engaged in criminal activity. By the time that Officer Greenhouse trained his firearm on McDonald, police actions would have made a reasonable person feel free to try and end the encounter in front of Wesley. Under Mendenhall and this court's 2012 Jones case, this was not a seemingly routine approach of a police officer. If this was a clear and immediate assertion of authority, block entrance, issue commands, point the gun. After officers intentionally parked their SUV, Officer Greenhouse completed the physical block by quickly crowd-walking to block the police available at the path. Physically blocking McDonald and his departure is a significant factor in effectuating the seizure. Human flesh will of course by police. The number of police, their pseudo-military police attire, the fact that they were armed and they were actively bearing arms on them, what they were armed with, an M4 assault rifle, and semi-automatic handguns. Those were all factors in favor of fighting the seizure. However, Officer Greenhouse trained his gun on McDonald about a second after he leaves the SUV on shuttle commands and undoubtedly effectuates the seizure. Sorry to interrupt. So parking the SUV directly in front of Mr. McDonald's car, that was a seizure? Well, it wasn't directly in front of the vehicle. It was off to the side. That's important. It wasn't until yesterday afternoon that I realized this. Earlier than ever? Right. In the record, we spent a lot of time on direct across figuring out if the car would leave or not. And Officer Greenhouse testified that at the end of the day, the car was able to leave, but only as you're in the car taking a left-hand turn. That wasn't where Officer Greenhouse was blocking the exit. And there was a lot of testimony about that. And Officer Greenhouse had indicated that this engine had this engine noise. And I'll spend some time on that. But what I want to point out, in review of the video, Officer Greenhouse makes a tremendous amount of argument and noise about this engine making noise and about how that was intent to flee. But if careful review of the video, the wheels of McDonald's SUV, they don't can't. They never turn to the left. So while he is in that vehicle, there was no intent to flee. And I'll explain my argument in more detail as we move on. But those wheels, if Officer Greenhouse was supposing this idea that McDonald's was attempting to flee by revving the engine, did you assume he would have had to turn his car to the left? Well, you also need to conclude that, you know, he obviously pulled out with absolute certainty. I mean, here's the engine revving. Isn't that reasonable to assume that somebody might be trying to skedaddle? Well, I think that we'd have to be a particularized person, Mr. Greenhouse. We'd have to be a reasonable suspicion. I think we tread into the ground that Black was looking at. And it's this sort of retroactive construction of batteries. I don't think that we get to the engine revving. I'll get back on track. Because 43 seconds into the body cam, Officer Greenhouse had blocked in Mr. McDonald. At that point, reasonable suspicion had not had time to mature, let alone to us. Mr. McDonald, at 23 seconds in, the government had briefed at 14 and 17. They asserted that Officer Greenhouse's attention was not focused on the SUV until a break-off occurred with the engine revving. But that assertion is undercut by Officer Greenhouse's sideways walk. He used his body squared to that SUV. It never leaves the curb of your body cam. And Officer Greenhouse was looking in a different direction on his camera as well. So, particularly at the point that Officer Greenhouse trimmed his firearm on McDonald's SUV, he hadn't developed that particularized reasonable suspicion. When you say all this other activity that the government relies on, the smell of marijuana, the sound of rustling in the car, going up and down, do you say that occurred after that Officer drew his weapon? It does, Your Honor. And let me spend a moment on that. So, we dock at 27. We file a notice of supplemental authority citing this using Peter's case. And Peter's case makes very good sense. It's on point in this case. But it cites United States First T.O. That's 893-F3232 for the proposition that body camera footage enables this court to independently assess the facts in question and to affirm on the basis of this court's assessment, not that of the district court. And if I'll briefly spend some time walking through the video, at three seconds in, the housing authority there is in view. The police SUV is traveling toward it. At 18 seconds in, Officer Greathouse opens his SUV door while the SUV is still moving. Four seconds later, Officer Greathouse exits the SUV, and the crowd seems to react to whatever commands the officers are shouting. A second later, at 23 seconds, Officer Greathouse first raises his gun as he reaches roughly the midpoint between the SUV and the black car. That's 23 seconds in. McDonald's completely locked in at this point. 24 seconds, Officer Greathouse first specifically trains his firearm on the gun in the red SUV. At 26 seconds, that's two seconds later. This is a reminder that the weapon is trained on. Your Honor, in the video, the body camera video, the vehicle to see in the car, I believe that Officer Greathouse had testified that he was able to see in the vehicle through various points. But Mr. McDonald's facial expressions are not. Well, I mean, the reason I ask that is that the law, as I understand it, requires not just an attempt by the officer to seize, but then a submission to the use of force, and that completes the seizure. So if he didn't see the weapon trained on, why would that be a seizure? Well, Your Honor, I think that we don't have to get to that point. When we think about a police vehicle rolling into this neighborhood, officers jumping out with assault rifles and guns drawn, I don't think that there's any reasonable belief that Mr. McDonald didn't realize that the police were there. Well, then he testified. He did not testify. How would he know that? I mean, if he didn't see the weapon drawn on, how would he know that that's what the officer was intended to do? Well, Your Honor, we see in the video, we see the crowd react to the officers pulling up, and we don't hear, oh, they're there, and everybody sees. Your Honor, I think that there's an argument to be made, and we don't have to reach that question. Some of the other individuals may have had the online police citizen encounter, but that's not what's here. What we do have is we have Officer Greyhouse train his firearm on Mr. McDonald, but almost immediately after he exits the SUV. Now, that happens. And just to be clear, that's not to say he was seized. Yes, Your Honor. Even if he didn't, well, I guess you say that you can infer from the record that he must have seen that, but if we were to find otherwise, would that be a seizure? Well, Your Honor, I think what the court can focus on is that Officer Greyhouse testified that police were shouting commands, and I think it's very clear from the video that all the individual's attention, all the prosecutor's attention, was focused on the officers. When we look at the engine noise and the fleet, the court made a point about a lack of submission. I think that that's a bit of a red herring, and especially when it relates to the engine noise, because it's too late, and it's not indicative of flight. I'm going to put this on its head a little bit, but the idea that Mr. McDonald didn't submit until it turned 4-0, it should be on its own persuasive to this court, because the record doesn't adequately support Mr. McDonald in fleeting or engaging to fleets or attending fleeting officers, and government sites were low, and the headlong flight standard asserted. A careful examination of the video shows that that engine noise occurred after the gun was trained on Mr. McDonald, after the commands were issued by the officers, and after the vehicle was locked in. There's a good case law here. One of the cases that the government cites here was Clout. That's inapplicable. It doesn't render this search lawful. There's no question under the law that officers are required to have reasonable suspicion prior to the seizure of an individual. But in Clout, the defendant did not submit to authority. He wasn't even in a vehicle. He got in and out of his car, and there was a body camera that captured Clout walking away, despite the officer's commands to the contrary. So if you are free to leave, you're not in a situation where you're being seized. But if you do, in fact, exercise that being free to leave, hopefully it creates a reasonable suspicion. Your Honor, I think we can... What R.E.D. and the Supreme Court's clarification from Brentwood in California sort of sets up that paradigm. I think the Court makes a good point about the other individuals who were up there. Officer Greenhouse at the hearing had indicated they were compliant and they were readily listening to what he was saying. Your Honor, if you look at the video, the individuals were just short of outright belligerent. I think that that goes to the scenario. They can't believe that there's an officer painting his gun across this parking lot when just a few moments before, they were all engaged in a conversation. Can I go back to the seizure again? Because I'm back at Judge Biggs' opinion, and I think she actually agrees with you there, whether until Officer Greenhouse went and spoke to your client and told him to turn the car, that he was seized, as she says that. Or maybe you're not saying... Yeah, tell me, when was he seized? I would submit to this Court that McDonald was seized the moment that he made Greenhouse train his firearm on McDonald, and that happens at 24 seconds into this video. I think... Is that inconsistent with what Judge Biggs found? It's difficult to understand, Your Honor. That's when it makes 132, the Court's opinion there. And I think it's unclear. She says that it's the second fact that when the seizure was... She has two facts in the sentence before it. There's the training firearm and the engine noise, and those happen at different times, materially at different times. Well, she says it was not until Officer Greenhouse pointed his pistol at the defendant and instructed him to turn off the Honda that the defendant complied. It was the second act that he complied, I guess, that that constituted a seizure. Do you agree with that? Well, I do insofar as that 24 seconds in is when Officer Greenhouse trains his firearm on Mr. McDonald. It's not until 32 seconds later that... I'm sorry, 32 seconds in the video, which I know that that seems like a short amount of time, but that's when Officer Greenhouse has shut the car off. And there's quite a bit that happens in that short amount of time. But what I would point forward to is that when these officers roll out, they're there for a Joseph Cates, and Joseph Cates is long gone by the time that Officer Greenhouse exits the vehicle and sort of starts to interact with the crowd. And Officer Greenhouse's first action is not to assess the scene and look for danger. His first actions are to shock hands and have his firearm raised at the crowd. You bring up the fact that Cates had fled. The whole thing began with this... Was it an Instagram poster? One of them was a random type, I think it was one, where they saw two individuals, one smoking, and the other one apparently holding a firearm. And that's what prompted this attempt to arrest Cates once they found the location. So the officer knew that there was at least one other person that they were looking for, right? So wouldn't it have been reasonable? And apparently this person was wearing a dreadlocks. Do I have that right? You do, Your Honor. I would submit to this court that that description is generic. It's completely useless. Just in the four people that are there present in the video, two of them match the description completely. A black man with dreadlocks in a predominantly black community, that's just not sufficient. It's not sufficient to particularize suspicion to an individual. When we look at just the video itself, the individual with the baseball jersey, you better match it to the description. There was a testimony by the officer at Greyhound. The individual in the Instagram video also had a do-rag on. But Mr. McDonald had his hair up, his dreadlocks at the top of his head. Regardless, the officer at Greyhound's testimony does not establish that he observed the dreadlocks prior to training his gun on Mr. McDonald. And that, again, is not part of the case. The officer at Greyhound trains his firearm on Mr. McDonald and sees his confession. That's even before he was able to articulate or particularize suspicion, not only of a crime he committed, but of whether Mr. McDonald was involved in it. Did he see Kate interacting with the driver of the car? Yes, your Honor. And that's in the record. But that alone is not enough to... No, it is that. But, you know, Judge Bates goes through a whole bunch of other factors about, I don't want to read them, but looking at the smell of marijuana and the like, and the verbal movements that I talked about earlier. So it's not just an individual fact. As you know, it's the totality of the circumstances that later conclude that there was enough here to deny a motion to suppress. And so what is wrong with that analysis? Right. And it is the totality of the circumstances. Your Honor, the difficult problem with the analysis is that things that happen after the seizure is officially, they shouldn't factor in. They don't factor in the totality of the circumstances of the analysis. Officer Greyhound sees Mr. McDonald a second or two after he left that SUV. He had not particularized any of the factors that are articulated by the government or that are contained in the district court. Can you say all of what happened after the seizure? And specifically what marijuana, the smell of marijuana. So there's a general smell of marijuana, and then there's a sort of process of particularization to Mr. McDonald. That occurs much later. We're at 40 or 50 seconds on camera at that point. We talk about some movements. They're not couched in the spur of the moment. They're the officer Greyhound's first movement, reaching. That occurs after Officer Greyhound has trained his firearm. That occurs after we've all been locked in. Those are clear indications that a seizure has been effectuated. There's not sufficient evidence. First part of the analysis is, was it a seizure? Because we were going back and forth as to when the seizure occurred. Did it occur in the cause? Did they block them in? Could they get out or whatever? Did the guns strike them on them? And what about the cause? Did they basically say, okay, good, that's a seizure. Then there's the question, was it long? And that is determined by whether there's a particularized objective basis versus the perspective that criminal activity is at fault. And the factors that Judge Diaz alluded to are the very factors that would suggest there's criminal activity. The first one being the guns. I don't think that's going to get you there. The state of the law in North Carolina, having a gun out by any individual is not illegal. Adds to some of the knowledge about something else, maybe a felony or whatever. That's just the state of the law in this state, the great deal of this country, is that walking around with a gun is not legal. So that's not going to give you any particularized basis for coming across and saying that criminal activity. So then you've got the other factors. You mentioned the marijuana spill, which is a question about who. But there's some good case law. This officer is always coming from this crime. He's out in the crowd. And it probably didn't come from the homicidal as I know. But I'm not sure that's enough to give you a basis, a particularized basis for it. So I think when we look at these factors here, that's kind of where this case lies, is was there sufficient evidence here? Or was there a particularized and objective basis for, at the time, determining that criminal activity was a foot by this individual? Clearly, he's a bad guy. And they know that he's a criminal. And they know he has no business with a gun. You see, you've got a problem. Someone else could have the same basis. But if you don't know about it, it's legal on the marijuana until you get something else to do. Chief Judge DeVos, it's my respect to Collin's turn. If I could address Judge Montanaro here, please. Thank you. And, Judge, you were speaking to the United States v. Black. And I agree with all the court's observations. Again, this idea that a firearm exists as a case, that's enough. They don't literally need a gun in a restaurant to execute a case.  But as to this other individual, I agree with the court. The fact that there's a firearm doesn't mean. I believe the language is that the default status is not a felon. And that officers cannot use that as a justification to support their reasonable suspicion, especially as it relates to articulating facts. Now, we have law. As close as you can get to that line. I mean, an individual in a 7-11 shows up with a gun. They call the man. They call the police. They show up. We articulate some extra little facts. Really, it's the fact that he's got a gun in his hand. A 7-11 walking around with a gun. It's a walking around with a gun. I don't care what you look like it is. Unfortunately, I would say, but it is the state of the law. So a person lawfully walking around with a gun does not create a particular basis for saying the problem of activity is a felony. Yet, that was the case in which we went. As I said, we dance around some facts. I don't have a grand opinion on this. I don't have a grand opinion. So I was saying it was okay. All I was doing was saying this is what the majority are saying. All you have is that fact. And maybe there's more here. Because marijuana may be the basis. Or maybe, do we look at, and I don't want to take to a certain totality of the circumstances, but do we look at each one of these facts separately? How does that work? Well, Your Honor, I think that we can sort of do both. There's the totality of the circumstances. That's the test we're operating under. But most of the case is so fact-intensive. And that's why I point the court to the video. That's why I point Peters through Timo, this court, essentially, to review this video and make its own determinations. Do you take a position that video supersedes the judge's opinion? I do that with Peters. I mean, Timo and I believe that's the law. And that's what you're arguing here? Yes, I believe that's the law. The result is a clear error in the judge's reservation. I think that with the point that Judge Diaz made about the Detroit Penance 132, the court couldn't be clearer. But I submit to this court that you don't have to. Under Peters and Timo, you're permitted to review the video and make your own determinations, Your Honor. And you made much of a scratch in Walden, then. Plaintiff guilty, and you're up here on conditional guilty plea. That's right. The purpose of the sentence here. That's correct. Authorized to take an appeal after conditional guilty plea. Section 3742. And you make a no-doubt appeal, right? Yes, Your Honor. And I'm here in the district office in SCIF. Thank you, Mr. Knight. Thank you. Ms. Freeman. Thank you, Your Honor. Good morning, and may it please the court, 1C Freeman on behalf of the United States. Taken together, the facts and inferences found in the district court explain why Officer Greenhouse focused on Mr. McDonald and Mr. McDonald alone. It's because he had a particular reasonable suspicion as to Mr. McDonald that justified the detention and the arrest that occurred. You have no idea where we need to go with this. I'm sorry, Your Honor. Those reasons that he has alluded to, in terms of judge Bix, those are the ones we need to focus on. Unless you focus on the individual's side of that dilemma, personal dilemma, that they are armed with dissonance. Yes, Your Honor. The fact of the game. So what happens is, as this court knows, is that there's an instrument like the AO. The officers are there, and I should clarify for the record, they're there to arrest Cates, who holds a gun on the officers, which explains why they're exiting the vehicle with their guns on. They are not necessarily looking for an individual with dreadlocks who has a branch, who's branching a firearm. But they had Cates under surveillance. They know who he is. Yes, Your Honor. He's a fellow, and they see him with a gun. He doesn't even have that gun on him. That's a look. So they go ahead and pin him. That's good. How do you get the gun? What's important to note is that we're looking at the totality of the circumstances and all the factors together. And I got that. I want to make sure we let us accept that as a nice, general statement. Let's move beyond that and look at the circumstances. So we're going to do that. They're looking at the totality, and you've got to look at each one and then say, okay, baby, together. But each one has to stand for something. You can't have ten zeros and get anything other than a zero. So you're getting something other than a zero. I'm not saying these are zeros. I'm just saying that using a catchphrase, totality of circumstances, it doesn't get you to work. Analysis, we need you. That's what Judge Bates is, you know, take away from these cases. Yes, Your Honor. And the reason the fact that there's an unaccounted for gun on the scene matters is that it's an important lens with which to view the actions that Mr. McDonald took that morning. I'm sorry, that afternoon, and no one else took. Those, when you're reaching. . . There's an unaccounted for gun this time. Tell me about that. So they see on the Instagram live video, they see Kate, and they see an individual who's bringing a firearm. They're aware of that as they roll up to the scene. And as Kate pulls a firearm on the officers, they believe that minutes prior, based on the Instagram video, and at that exact same apartment complex, someone had a gun. And so. . . No, Your Honor, it's not. Or someone could have a gun. In fact, everybody has a gun. That could happen to them. They walk around with a gun, basically. That is not a legal marijuana. That won't get you. So tell me something that will get you. When. . . This is not, I should say, United States v. Black, where the individual had a gun, and they started applying the rule of two in that case. That gun was lawfully holstered, and it was a male one, evident, easy to see in the eye. Does it mean lawfully holstered? Does it have to be holstered to be lawful? No, it doesn't. But what I'm saying is. . . It depends. Let's accept that there are some pretty free gun laws in this state and in this country. And for legal ownership and sale of guns, our laws have just opened up the doors for anybody to walk around with a gun. And if you see someone, an officer. . . Listen, I truly have a lot of impotence as a lawyer. The officers, I understand that. Who wants to walk down a known drug area where everybody has a gun? That's not safe. Everybody knows that. But I'm talking about in terms of getting there with the laws we have in place. And so let's accept. . . Having a gun, you would agree. Just by individual. . . Whether it's holstered, unholstered, or on the dashboard. . . Maybe the seal could be a problem, but we've got a new seal we have to commit to in this state. It would be there. So we can't just take that as being a basis for whatever. Maybe there's not going to be a rise to anything from it. That's right. That's right. I agree with that. I think what Judge Biggs was doing in her opinion below was saying that the knowledge that there's a gun on scene, potentially, provides a lens through which to view the other actions that Mr. McDonald took. That second-class citizen thing I didn't say that. That the individual who's on a scene or in a place where there's criminal activity then becomes a second-class citizen with regard to the Second Amendment right, because he's got a gun. That's not true, is it? No, it's not, Your Honor. So how is that helpful? I mean, I don't want to say. . . Again, if we're talking consents, I would agree. But I'm just going to walk on this. This is not a law. This is where our laws are in terms of how we get to particularize criminal activity based upon folks with guns in a place where there's somebody else who shouldn't have one, or bad things will happen. Your Honor, that knowledge is particularly important here when you review or think about the fact that Judge Biggs also found that Mr. McDonald was reaching. Mr. McDonald was attempting to flee. He didn't do that, but he pulled out the gun, right? That, actually, respectfully, Your Honor, I would disagree. So that's not a factually correct statement, that they did not start the reaching or the movement before this gun was trademarked? Respectfully, Your Honor, I disagree with that. The respect. . . I'll tell you. . . I just need to know. . . Was that your intention? Judge Biggs has blown, yes, that the reaching and the rubbing occurred prior to Officer Gray has trained his gun on Mr. McDonald. But now, let's put it in context. He didn't just start reaching. You've got a whole column of officers that come up, jump out, weapons all over the place, and you're sitting in your car. What reasonable person just calmly places their hands in a very calm manner and do nothing? I mean, isn't it reasonable to consider that people would become fidgety? It could be a factor. But is that going to say there's some criminal activity? The fact that people get nervous and maybe get fidgety and move about? Your Honor, that fact alone wouldn't be enough. I agree with that in terms of . . . We've got two. So give me another one. So far, I think we have two zeroes. But that's my characterization. Okay? Yes, Your Honor. Judge Biggs will have found that through the lens of note, there was another gun on scene. There was reaching and revving and the smell of marijuana that was not yet particularized to the Honda, but which was from a complicated source. And from all of those factors together . . . And the smell of marijuana with a whole group of people would tell you what had been done. I think it's important to note that, first of all, Judge Biggs credited officers for a great process testimony on this point. And he had testified that he smelled marijuana within seconds of getting out of his vehicle. And that it came from a concentrated source. He knew this because he did not . . . That variable or description. He . . . He is standing. How far from Scott? He is. And it's hard to tell, Your Honor, from the . . . He's across the street. The neighborhood is supposed to be right there next to him. I mean, I don't know how far he is. But he said a concentrated source. Yes, Your Honor. That was his testimony, which Judge Biggs credited below. And he put it as if there were no marijuana cigarettes on the ground. That there was no smoke in the air. There was nothing to suggest that there had been anything that would dissipate. So . . . I know that Biggs' law doesn't support that. I mean, Biggs' law stood up to the option that when you have a number of people . . . You had one individual who leaves out a bunch of old people. It wasn't until he ran away that that odor could be particularized to him. But here you've got people all around. I don't know what that means. This odor. This concentrated odor. That the officer says is coming. I don't know how he does it. I mean, that's . . . To be clear, the officer says that he believes it was a permanent concentrated source based on his observations of no marijuana cigarettes and no smoke in the air. And it was Judge Biggs, in her opinion, who, again, looking at the factors together, putting into context the fact that Mr. McDonald had attempted to flee, and there was a concentrated smell of marijuana, reasonable inference, which . . . You had an attempt to flee, which was based upon the Honda engine revs. Yes, Your Honor. No canting of the wheels. No movement, otherwise, on the revs. Yes, Your Honor. But it didn't go anywhere. It did not go anywhere. That is correct. Immediately when the officer pulled the gun, he either gave up . . . The engine revs, the officer pulls his gun. Judge Biggs found that, from the revving engine, Officer Greathouse rightfully inferred that Mr. McDonald was attempting to flee the scene. And that's at Joint Headings 138. She finds that because Mr. McDonald, the revving of the engine, while there could be an innocent explanation, could have slipped, something like that, it's these factors together that, again, Judge Biggs found compelling to find that there was reasonable suspicion in this instance. That was particular to Mr. McDonald. I should point out that Appellant emphasizes that no one else is singled out on the scene. I think that goes to the fact that Officer Greathouse did have reasonable, particularized suspicion for Mr. McDonald. He allows the others to actually leave the scene. It's because the engine is revving, because he is breaching. These are all factors that this court has found in other cases, whether it be Mayo or Smith, or the Supreme Court has found in Wardlow. These types of behaviors have led officers to find reasonable suspicion. Is it also that his belief or suspicion that he had been associating with Mr. Cates, that we saw him near the car, saw Cates near the car, perhaps saw somebody who looked like not exactly McDonald, someone who was wearing red locks, and had a surrounding video. What about that factor? That factor, again, is one of the factors. Again, there were many that the judge, Judge Biggs, relied on below. Of that factor, I think it's important to note that it's not the fact of mere association. It's the fact that Mr. Cates was associating with someone just minutes prior on the Instagram video. Then the officers arrive at the location where the Instagram video was shot, and an individual on scene ruts his engine and attempts to start acting in an evasive manner. It can be hard to believe that, because you believe there's a firearm on the scene, that the explanation, and this is what the officer testified to, is that that individual is attempting to reach for or retrieve a gun that is unaccounted for at that time. It is not your honor, but when someone is treating said firearm in a suspicious manner... Which is? Reaching for it, grabbing it, attempting to leave the scene... Reaching for a firearm is illegal? When it seems to be the evasive movement that this court has found in numerous other cases, too. Evasion being based upon an engine. Right. And engine grabbing, the reaching, and the other factors, of course, that the court found as well. When reaching for a firearm causes concern to officers who arrive on the scene, it's in response to the officers being there to see somebody reaching for what they think is a firearm, whether legally or not. It's a reasonable concern for their safety at that point, don't you think? Very much, your honor. That is true. And that is something that is part of the analysis and part of the context for when we review whether or not the officers actually were reasonable at that time. That is an important factor to take into consideration. You're saying that is a factor in determining whether there was a particular basis for determining whether criminal activity is afoot? This is not, your honor, the United States being national, and I know you had a dissent in that case, where it was... I had what? A dissent in that case. On the basis of they're a man with a gun. That is not. They're not out there looking for a man with a gun. They're not even, to be particular, and to focus that for the record here, they're not necessarily even looking for the individual with dreadlocks with a gun. It informs the actions that are taking place on the ground. It's an important factor that they consider, and when you add the types of evasive movements that Officer Greathouse saw Mr. McDonald, and I should say Mr. McDonald alone, demonstrate, it led Officer Greathouse to believe that there was contraband, either drugs or a firearm, that Mr. McDonald was reaching for. I should say, too, that part of the analysis happened on the ground. Officer Greathouse noticed that the other individuals on scene, he saw their hands, he didn't see bulges, they weren't reaching in the same way that Mr. McDonald was. Mr. McDonald's actions led Officer Greathouse to focus on him, and to focus on him because he gave him reasonable suspicion that having a firearm, and yes, while just having a firearm would not typically be against the law in North Carolina, Judge Wins, you're absolutely correct on that, when the individual is treating said firearm in a suspicious, evasive, attempting to flee manner, that takes on a whole new meaning for the officers who are on the ground. I should also emphasize, too, that we are not looking, we're at the reasonable suspicion standard. We're not at the probable cause standard of proof that the individual was violating the concealed carry law, or was violating a particular firearm law. There was just the concern that Mr. McDonald had contraband, and that he was reaching for it, that he was attempting to flee because he had it. I think what's particularly important... The basis of the contraband is the smell of marijuana. The smell of marijuana, yes, sir. There are two people in the area. There are two women and one gentleman. All together. They're standing by the cars that are on scene, yes, sir. They're standing by the car, and any indication of the smell of marijuana could come from any of them. According to the testimony, I'm going to converge this court to remember that the district court did credit the testimony of Officer Greyhouse. I understand that, but that was an opinion. Yes, Your Honor. You do understand that was an opinion. That was a technical fact. He said, based upon the concentrated issue, that's his opinion. I got it. But he testified that on the basis of not smoking a marijuana cigarette, not seeing smoke in the air, and the fact that he had his 10 years of time as a police officer. I should say he had been a police officer since 2004. His 10 years are on the scene. What time period are we talking here that all of these actions happened? How quickly, Your Honor? Yes. He opens the door at second 19, and then by second 24, he's releasing his gun. So how many seconds? That's five seconds, Your Honor. In five seconds, he's able to discern how many cigarettes was on the ground, who's got what and what ain't, and a sentence coming from concentrated source on this individual. Those are the factual findings of the district court. Yes, Your Honor. It was quick, and I do think it's important for this court. He's good. He's very good. He's been doing this for a while, Your Honor. He's been a part of this specific selective enforcement team for, at this point, nine or 10 years. And I should say that... I'm sorry. What does the video of anything do with respect to this analysis? Because you're probably on the other side. So there's a good amount of time suggesting that the video just contradicted the findings that Judge Biggs made in this case. Your Honor, respectfully, I don't think it contradicts the findings of Judge Biggs in this case. You don't even hear if the body-worn camera doesn't go on until second 29. So we're relying on Officer Greathouse's testimony regarding the revving. And he's very clear that he focused on the Honda as soon as he heard the engine rev, and that he focused on the Honda because he heard the engine rev. And as he focused on the Honda, he saw the movement. It was at that moment that he raised his gun and trained it on Mr. McDonald. Though, of course, I would agree with the district court's finding about seizure actually taking place with the acquiescence. Mr. McDonald. But regardless, we have reasonable suspicion at the second that the gun was trained on Mr. McDonald because there's a reason why he focused on Mr. McDonald. It was what the district court found. The revving. The reading. And, yes, Your Honor, the smell was correct. Not absolutely particular to the Honda, but felt like it was a concentrated source. And it was those factors, in addition to the fact that Mr. McDonald was interacting most closely with Mr. Cates at that moment, that someone with Mr. Cates had a firearm that led Officer Greyhouse to believe that Mr. McDonald was involved in criminal activity. I would also caution the court. This is not a situation with Black or even Peters where there are arguments that are coming forth for the first time before this court or in the government's brief or even in the officer's report. If you watch the rest of that body-worn camera video, you'll see that Officer Greyhouse tells Mr. McDonald, You were revving your engine. I saw you reaching. He explains why he stopped him and he uses those factors to explain why he thought Mr. McDonald deserved the focus that he gave him. And it's important to note, too, that Mr. McDonald was the individual who was focused on him, and it's because he provided the five factors, five specific attributable factors, that the district court relied on. No one else on scene did. Not everyone was seized. They were allowed to go on their way. But it was the district court's factual findings, which this court can review for clear error in the light most favorable to the government, that meant that we have reasonable suspicion to detain a person as Mr. McDonald. Do you think we should just permanently put him in the district court? Yes, Your Honor. I see my time has expired. Thank you. Sir, Mike. Thank you, Chief Judge. May it please the court. I appreciate the comments here. I've highlighted a portion of the point of appendix. I wasn't going to go into this because of Officer Greyhouse's credibility. He's not credible by the court. But I wanted to put this on the court's radar since Officer Greyhouse became the topic. At J-113, this is the end of the cross-examination. Officer Greyhouse, later on, after this file is being recorded on his video, he makes a call to Investigator Wilkins, who's sort of the supervisor that he's working with on this case. And I asked Officer Greyhouse, and you asked him at the point you were trying to see if Mr. McDonald matched the description of the individual dreadlocks. He answered, yes, sir. I was trying to get further information. I said, and during that time, when you were speaking with Officer or Investigator Wilkins, you gave information about what Mr. McDonald looked like. Yes, sir. And you told Investigator Wilkins there was just one guy with dreadlocks. Yes, I did. That's not accurate. That's not an accurate statement of what happened. We know that there were two men with dreadlocks there. The man in a very small jersey, indeed. The individual in the car. And so I'd like to shift back to where we're at. This is a public place, right? This is a public parking lot. The seizure happened in broad daylight on a September afternoon, not occurring at night, in the dark, or even in a secret location. McDonald was with his girlfriend, seated in the passenger seat of the car. It exceeds a police citizen encounter for officers to train their firearms on bystanders in this area. And I think that's the underlying issue here. There were many other things that Officer Grayhouse could have done that would not have gone toward effectuating a seizure at this point in time. Briefly, I'll address the guilty by association. That's the Palms, that's the Guevara, that's the Braun, that automatic companion doctrine that the government submitted at the district court level. Misdreaven was not at the hearing. It was a different AUSA. But they relied on this automatic companion doctrine to establish not just grievance but a position of probable cause. They said, since you're with someone who's guilty, then the police need to load this up. That's not a good law. It's not enough. I would submit it's not a favored factor. The other thing that I would submit is that this court has repeatedly cautioned the government against patching together innocent facts and that to me is very rude. That's black and black, and I'm urging to let some of the cases on that form. We would ask that the court, a.k.a. the district court's judgment reverse the opinion and remand for the proceedings. Thank you, Mr. Bennett. I'll thank both counsel, Mr. Hardy, and this is our final case of the day. We will adjourn court, come down to the Green Council, and retire to conference of cases.
judges: Albert Diaz, Robert B. King, James Andrew Wynn